UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ALICIA M. ORNELAS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Respondent. | Case No. ED CV 14-02046-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Alicia M. Ornelas ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security disability benefits. Because the ALJ's decision was supported by substantial evidence in the record, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

## I.

## BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits ("DIB") on April 15, 2009, alleging disability beginning June 10, 2008.

Administrative Record ("AR") 25, 266.[1] After Plaintiff's application for DIB was denied, she requested a hearing before an ALJ. AR 25, 62-72. On December 14, 2010, the ALJ issued an unfavorable decision. AR 25-33. After the Appeals Council declined review on July 28, 2011, Plaintiff filed an action in this Court for judicial review, which was assigned case number ED CV 11-01527-SS. AR 333-342. The parties stipulated to a remand, and, on May 8, 2012, the Court remanded the case for further proceedings. AR 346-354.

Per the parties' stipulation and subsequent Appeals Council remand order dated July 31, 2012, the ALJ was required to: (1) obtain additional evidence regarding Plaintiff's physical impairments; (2) give further consideration to Plaintiff's residual functional capacity ("RFC") and explain the weight given to opinion evidence from treating and non-treating sources; and (3) obtain supplemental evidence from a vocational expert ("VE") to clarify the RFC's effect on Plaintiff's occupational base. See AR 266, 348-49, 357-59. The Appeals Council also determined that its action vacating the initial administrative decision and remanding the case rendered Plaintiff's subsequent application for DIB duplicate and consolidated Plaintiff's claims. See AR 358.

On remand, a second hearing was held on February 21, 2013, before a different ALJ. AR 266, 284. The ALJ issued another unfavorable decision on March 15, 2013. AR 266-276. In reaching this decision, the ALJ found that Plaintiff had the severe impairments of cervical musculoligamentous strain, cervical-spine discopathy with radiculopathy and disc protrusions; impingement syndrome in both shoulders; degenerative-disc disease of the lumbar spine; musculoligamentous strain of the lumbar region; left lower-

---

[1] On September 22, 2011, Plaintiff filed a subsequent application for DIB. AR 358. She filed an application for Supplemental Security Income ("SSI") on September 30, 2011. Id.

extremity radiculitis; left carpal-tunnel syndrome, status post left-carpal tunnel release; greater trochanteric bursitis in both hips; chondromalacia patella and patellar tendinitis in both knees; and obesity. AR 268-69. The ALJ determined that despite her impairments, Plaintiff had the RFC to perform light work with the following additional limitations:

> She can occasionally balance, stoop, kneel, crouch and crawl. She can use her upper and lower extremities for occasional pushing or pulling. She can use the upper extremities for occasional overhead reaching. She can use her left hand for frequent handling and fingering. She can use her lower extremities for occasional operations of foot controls. Furthermore, she will require the use of a cane or walker if ambulating more than 25 feet away from the workstation.

AR 271.

Based on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a production-line carrier and therefore was not disabled. AR 275-76. After the Appeals Council denied further review, this action followed. AR 242-46.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ (1) correctly evaluated the opinion of the consultative examining physician; (2) properly assessed Plaintiff's credibility; and (3) erroneously failed to address lay-witness testimony from Plaintiff's daughter. See Joint Stipulation ("JS") at 4.

///
///
///
///

## III.
## DISCUSSION

### A. The ALJ Properly Weighed the Opinion of the Consultative Examining Physician

Plaintiff first contends that the ALJ improperly gave "significant weight" to the opinion of the examining orthopedic physician Vicente Bernabe.

Plaintiff argues that Dr. Bernabe's opinion did not constitute substantial evidence because he was not provided her medical records. See JS at 5-7. Plaintiff suggests that Social Security regulations "direct that all the available medical records should be reviewed by the examiner," see JS at 5, but in fact the examiner need only be provided with "any necessary background information about [the claimant's] condition," 20 C.F.R. §§ 404.1517, 416.917 (emphasis added); see also Walshe v. Barnhart, 70 F. App'x 929, 931 (9th Cir. 2003) (rejecting argument that consultative examiner's report was incomplete because physician did not review claimant's medical records and noting that Social Security regulations do not require such review). In addition, "[b]ackground information is not equivalent to medical records." Escobar v. Colvin, No. 13-0994, 2014 WL 218201, at *1 (C.D. Cal. Jan. 14, 2014).

Here, Plaintiff herself supplied Dr. Bernabe with the necessary background information, including how she had been injured in a work-related accident, the nature and location of her resulting pain, and the treatment she had received. AR 626-27. Plaintiff also informed Dr. Bernabe that she had undergone left carpal-tunnel surgery and was prescribed a walker by her primary-care physician. AR 627. Plaintiff points to medical records she contends that Dr. Bernabe should have reviewed, see JS at 10, but she does not explain how these records would have altered his opinion. Moreover, Dr. Bernabe physically examined Plaintiff, observed her movements, tested her range of motion and motor strength, and took x-rays of her lumbar spine, left

4

hand, left knee, and right shoulder. AR 626-32. Accordingly, Dr. Bernabe had a legitimate basis for his opinion, and the ALJ did not err in giving it significant weight. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinion based on physician's independent examination of claimant itself constitutes substantial evidence); Fortes v. Astrue, No. 08-0317, 2009 WL 734161, at *3 (S.D. Cal. Mar. 18, 2009) (holding that ALJ did not err in relying on consultative examiner who did not review claimant's medical records but "talked to [the claimant] about the history of her illness and performed his own orthopedic examination, cervical spine examination, lumbar spine examination, extremity examination and neurological examination").

Plaintiff further argues that Dr. Bernabe's "report is internally inconsistent." JS at 7. She posits that the limitation in her RFC that "[s]he can occasionally balance, stoop, kneel, crouch and crawl" is based on Dr. Bernabe's opinion that she may perform agility only "on an occasional basis," but notes that he elsewhere found Plaintiff "unable to squat and rise secondary to knee pain." JS at 7; AR 271, 628, 631. Plaintiff contends that "[t]his is inconsistent as in order to crouch a person must be able to squat." See JS at 7 (footnote omitted). Even assuming that an inability to squat precludes an inability to crouch,[2] it is not clear, as Plaintiff assumes, that Dr. Bernabe found that she is physically unable to squat. See id. at 7, 11. Dr. Bernabe's statement is also susceptible to the meaning ascribed to it by the Commissioner

---

[2] Crouching and squatting are not necessarily the same, as evidenced by the fact that doctors and ALJs sometimes address them separately. See, e.g., Cleveland v. Astrue, No. 10-5348, 2011 WL 3443794, at *3 (N.D. Cal. Aug. 8, 2011) (examining doctor finding that claimant could occasionally crouch, kneel, and squat); Winder v. Colvin, No. 13-1960, 2014 WL 4060010, at *2 (C.D. Cal. Aug. 14, 2014) (ALJ finding that claimant could occasionally crouch but could not squat).

– namely, that "Plaintiff subjectively reported pain upon squatting and rising." See JS at 9.

Indeed, Dr. Bernabe's other findings support this interpretation. Although attributing Plaintiff's inability to squat to knee pain, Dr. Bernabe noted upon examination only crepitus and some tenderness, with normal range of motion. AR 628, 629. X-rays of Plaintiff's left knee showed "mild narrowing of the patellofemoral joint but no acute fracture or dislocation," normal bony structures, and no misalignment. AR 631. Dr. Bernabe diagnosed patellar tendinitis and damage to the patellar cartilage, and he opined that Plaintiff could perform light work with occasional postural and agility activities and needed a walker only for prolonged ambulation. Id. These findings are consistent with a finding that Plaintiff's knee pain would not prevent squatting.

Moreover, as the ALJ noted, Dr. Bernabe's findings were consistent with the other evidence of record, which reflected "benign findings" and "conservative treatment." AR 275. With respect to Plaintiff's knees, in particular, the record contained little evidence of impairment. AR 274. Thus, although Dr. Bernabe had but a single opportunity to examine Plaintiff, the ALJ reasonably found that his opinion was entitled to "significant weight." AR 275 (noting Bernabe's orthopedic specialty, independent examination, diagnostic studies, and findings consistent with other evidence); see 20 C.F.R. § 404.1527(c)(4) (more weight given to opinions that are consistent with other evidence of record); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (noting that opinion of specialist about medical issues related to area of specialization is given more weight than opinion of nonspecialist); Tonapetyan, 242 F.3d at 1149.

It is the ALJ's province to synthesize the medical evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating

the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). Where, as here, the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**B.     The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff next contends that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective symptom testimony. See JS 11-17. Plaintiff testified at the second administrative hearing that she was unable to work due to back, shoulder, neck, wrist, hand, and leg pain. AR 291-298. Plaintiff said that she went to physical therapy for her back and shoulder, where her exercises included pedaling on a bike and lifting her arms. AR 291-93. She took medication, which "helps but [] does not relieve the pain completely." AR 291. She could only take half of the strong pain medication a day because it could damage her liver. AR 293. She was given shoulder injections, "but the injections did nothing." AR 294. She said that a specialist recommended back surgery but "wasn't 100 percent sure that [she would] be able to walk after that." AR 291. Before April 2010, it was recommended that Plaintiff get surgery for her left shoulder. AR 182-183, 221, 232, 293-94. Plaintiff did not know why the surgery had not been scheduled, but guessed it was because she did not have insurance at that time. AR 294. She did not remember whether she obtained health insurance before or after 2010, but indicated that she would inquire about scheduling the shoulder surgery at her next doctor's appointment. AR 293-295.

Plaintiff also went to physical therapy for her neck, where she was given

hot packs. AR 296. She applied Bengay to her neck in the evening. Id. She stated that carpal-tunnel surgery on her left wrist and hand did not fix the problem. AR 296-97. She testified that she did not receive any treatment after the surgery and her hand swelled at night. Id. She had a wrist brace that helped when she had "a lot of pain," but she was unsure of how often she wore it. Id. She testified that her left leg gave out when she walked, even when she used her walker. AR 297. She could not do the dishes because she lost her grip and dropped cups. AR 299. She also stated that she was "not really able to bend" and could not carry boxes because her arms "won't hold anything up." AR 302.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1035-36). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for

discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1284 & n.8. Additionally, "[i]n weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Smolen, 80 F.3d at 1284.

      The ALJ gave clear and convincing reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is supported by the record. First, the ALJ noted that Plaintiff gave inconsistent testimony. For example, at the February 2013 hearing, Plaintiff testified that she had not driven since she was injured in 2008 and that her daughter drove her everywhere, AR 289, but at the November 2010 hearing, she said that she drove short distances when there was no one to drive her, AR 44. And although Plaintiff testified that she could not comb her own hair, she told the consultative psychiatric examiner, Dr. Ana Maria Andia, that she managed her "self-bathing" and personal hygiene. AR 299, 669. The ALJ could rely on

these inconsistencies.[3] See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that ALJ may consider many factors in weighing a claimant's credibility, including "ordinary techniques of credibility evaluation, such as . . . testimony by the claimant that seems less than candid").

The ALJ also noted Plaintiff's testimony that her May 2009 "left hand surgery never fixed the problem and she could not lift or hold anything with her hand."[4] AR 272. The ALJ found that this was inconsistent with treating doctor Andrew Jarminski's reports that Plaintiff did well after surgery and had regained full range of motion in her left hand. Id. Plaintiff argues that she "had some relief after surgery, but then the pain returned." JS at 13. She states that she "tried to go to physical therapy after her left hand surgery because she had weakness in the hand after surgery." Id. (citing AR 643). Although in July

---

[3] Plaintiff cites Soto-Olarte v. Holder, 555 F.3d 1089, 1092 (9th Cir. 2009), for the proposition that "once a perceived inconsistency in the oral testimony arises, the ALJ must confront the claimant with the inconsistency and if an explanation is made address that explanation." JS at 12. Soto-Olarte held that an immigration judge cannot base an adverse credibility determination on perceived inconsistencies without first asking the asylum applicant about the discrepancies and giving him an opportunity to reconcile them. See 555 F.3d at 1092. "[D]istrict courts within the Ninth Circuit have rejected the contention that the rule articulated in Solo-Olarte applies in the social security disability context." Mulay v. Colvin, No. 13-2045, 2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015) (collecting cases).

[4] Plaintiff contends that this is a mischaracterization of her testimony because "[s]he did not state, as alleged by the ALJ, that she 'could not lift or hold anything.'" JS at 13. The Court disagrees. Plaintiff stated at the February 2013 hearing that when she tried to hold a cup with one hand, she dropped it, and her arms "won't hold anything up." AR 299, 302. She also stated at the November 2010 hearing that before "the surgery, you know my hands weren't numb and I could pick up heavy things. Now that they operated on me now when I want to pick up a cup of coffee I would drop it and before I wouldn't and the swelling doesn't go down." AR 46-47.

2009 Dr. Jonathan Kohan noted that Plaintiff "indicates that the surgery was not beneficial," AR 206-07, Dr. Jarminski reported in both April and May 2010 that Plaintiff "is doing well since surgery [on her left wrist and hand]. There is some residual tenderness. Full range of motion is resolved. The patient still has quick fatiguing of the hand with repetitive motions." AR 221, 235. In July 2010, when Plaintiff complained of tenderness around her left thumb, Dr. Jarminski diagnosed tendinosis, administered a corticosteroid injection, which Plaintiff "tolerated [] well," and recommended a splint for her left thumb. AR 232. It is unclear whether Plaintiff received a splint, but there is no evidence of further treatment from Dr. Jarminski. The ALJ noted Plaintiff's "intermittent complaints of pain of the left hand . . . to her primary care physician," AR 273; see, e.g., AR 655, 698, but Plaintiff testified that she did not receive any treatment after her carpal-tunnel surgery, AR 297; see Smolen, 80 F.3d at 1284 (noting that ALJ may consider unexplained failure to seek treatment). Additionally, the ALJ noted the unremarkable results of Dr. Bernabe's examination of Plaintiff's left hand and his opinion that she "did not have any manipulative hand limitations." AR 273; Smolen, 80 F.3d at 1284 (noting that ALJ must consider observations of treating and examining physicians in assessing claimant's testimony). Accordingly, the ALJ properly discredited Plaintiff's allegations of disabling left-hand pain.

In addition, the ALJ found that Plaintiff's "responses while testifying were evasive or vague at times, and left the impression that the claimant may have been less than entirely candid." AR 272.[5] For instance, Plaintiff testified

---

[5] Although not discussed by the ALJ, Plaintiff also appeared less than candid when questioned about her use of a wrist brace. See AR 296-97. When asked whether she used her wrist brace, Plaintiff responded, "At times I do use it because it helps me when I have a lot of pain so it tightens it and it helps." AR 296. The ALJ next asked when Plaintiff wore her brace, and she said she

at both hearings that the highest grade level she completed was third grade in Mexico, AR 45, 290, but at the second hearing, she said that she never finished any grades because she was pulled out of school each year, AR 299-300. Plaintiff said that she learned to read and write at an adult school in Mexico "and that's where [she] learned because [she] never really could learn," AR 299, but upon further questioning, Plaintiff said that she learned to read and write during intermittent periods of schooling and a month of adult classes, AR 300-01. Plaintiff attributes this testimony to her "trouble understanding the ALJ's questions as translated through the translator." JS at 15. The Court disagrees and finds that Plaintiff's testimony was sufficiently vague for the ALJ to discredit her on this basis. See Tommasetti, 533 F.3d at 1040 (holding that ALJ's determination that claimant was "vague witness" was specific and legitimate reason to reject claimant's testimony).

The ALJ also noted that, despite claims of debilitating pain, Plaintiff's treatment records revealed that she had "received routine, conservative and non-emergency treatment since the alleged onset date." AR 273; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (noting that evidence of conservative treatment is sufficient to discount claimant's testimony regarding severity of impairment). For example, the ALJ noted that "[t]he only surgical procedure the claimant has had was left carpal release" and she had regained full range of motion since the surgery. Id.[6] Treatment for Plaintiff's back and shoulder pain

---

wore it when it was cold out. AR 297. The ALJ then asked, "Is that the only time you wear your brace? Is that when it's cold?" Id. Plaintiff answered, "Well, you know, like in the wintertime, you know, I sit outside there, my daughter sits me outside and, you know, I wear it. And even in the heat time it also hurts. And the doctor says it's because of carpal tunnel, you know, it's there because they never really fixed it." Id.

[6] The ALJ noted that although Plaintiff's records reflected that shoulder

consisted of medication, physical therapy, and cortisone injections. AR 273-74.

      Plaintiff contends that her treatment history was not conservative, noting her treatment with prescriptions medications, corticosteroid injections, and chiropractic treatments, and that she was referred to (but does not appear to have been treated at) a pain clinic. See JS at 23. Chiropractic treatment and pain medication are generally deemed conservative. See, e.g., Apodaca v. Astrue, No. 11-10111, 2012 WL 4369753, at *8 (C.D. Cal. Sept. 25, 2012); Belman v. Colvin, No. 13-1466, 2014 WL 5781132, at *8 (C.D. Cal. Nov. 6, 2014). And although some courts have held that injections do not constitute conservative treatment, those cases involved claimants whose pain was treated (generally ineffectively) with a series of regular injections and more invasive procedures – not a couple of instances of pain relief through injection. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010); Christie v. Astrue, 10-3448, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011); Samaniego v. Astrue, 11-865, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27,

---

surgery was pending for some time, she "was unsure why no surgery was performed." AR 274. There is no indication that the ALJ denied Plaintiff benefits based solely on her failure to undergo prescribed surgery, which would have been error. See 20 C.F.R. §§ 404.1530 (b), (c), 416.930(b), (c); Nichols v. Califano, 556 F.2d 931, 934 (9th Cir. 1977). Indeed, the ALJ characterized Plaintiff's need for shoulder surgery as a "recommendation," AR 294, rather than a "prescription," which appears to be consistent with Plaintiff's medical records, see, e.g., AR 182-83, 221, 232. The ALJ was permitted to consider Plaintiff's refusal to pursue recommended treatment in assessing her credibility. See, e.g., Qualls v. Colvin, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that although ALJ may not "deny plaintiff benefits on the ground he failed to follow prescribed treatment," ALJ may "properly consider[] what attempts plaintiff made to relieve his pain . . . in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling"); Rodriguez v. Colvin, No. 12-00565, 2013 WL 4402702, at *8 (E.D. Cal. Aug. 15, 2013).

2012); Huerta v. Astrue, 07-1617, 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009). That Plaintiff received a couple of injections over the course of years, during which her pain was otherwise treated with pain medication and physical therapy, does not undermine the ALJ's finding that Plaintiff's doctors otherwise provided nonurgent, conservative treatment of her pain. See Walter v. Astrue, No. 09-1569, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discounted plaintiff's credibility based on conservative treatment, including medication, physical therapy, and single injection); see Tommasetti, 533 F.3d at 1039; see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

Finally, the ALJ reviewed the medical evidence and reasonably determined that it did not fully support Plaintiff's alleged symptoms and limitations.[7] See AR 272-75. He noted that none of Plaintiff's doctors had endorsed the extent of her alleged functional limitations. AR 272. As noted above, the ALJ properly gave significant weight to the opinion of Dr. Bernabe, whose findings were largely unremarkable and who opined that Plaintiff was capable of performing light work with additional limitations. See AR 273-75, 626-632. Dr. Bernabe's report showed normal range of motion in Plaintiff's

---

[7] Plaintiff contends that the ALJ "stated that there was no medical source statement from a reviewing, examining, or treating physician that endorsed [Plaintiff's] pain." JS 14 (citing AR 272). This mischaracterizes the ALJ's decision. The ALJ concluded that there were no medical source statements "that endorse[] the extent of the claimant's alleged functional limitations." AR 272 (emphasis added). In fact, the ALJ acknowledged that "[t]he totality of the records indicate that [Plaintiff] does have severe impairments involving the spine, both shoulders, the left hand, and the lower extremities." AR 274. However, the ALJ ultimately concluded that the records did not support Plaintiff's "allegations of debilitating pain and problems that would prohibit her from all work." Id.

cervical spine, elbows, wrists, fingers, bilateral hips, and bilateral knees. See AR 628-29. Plaintiff's complaints of pain and decreased range of motion in her back and shoulders were acknowledged by the ALJ in his detailed review of the medical record and presumably integrated into Plaintiff's RFC. AR 273-75. He integrated into Plaintiff's RFC Dr. Bernabe's findings that Plaintiff had positive impingement signs in both shoulders and thus "was limited to occasional overhead motions for both upper extremities," as well as the doctor's opinion that Plaintiff would require a walker for prolonged walking. AR 271; see AR 629, 631. Thus, the ALJ's determination that the objective medical evidence only partially supported Plaintiff's subjective complaints was supported by the record. Although a lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility, it is nonetheless a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604. It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony. Reversal is therefore not warranted on this basis.

///

///

C. **The ALJ's Failure to Address the Testimony of Plaintiff's Daughter at the First Hearing Was Harmless Error**

Plaintiff also contends that the ALJ's failure to address her daughter's testimony was reversible error. See JS at 24-26. A lay witness can provide testimony about a claimant's symptoms and limitations. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

At the November 2010 hearing, Plaintiff's daughter, Maria Ornelas, testified that her mother was in constant pain. AR 52-54.[8] Maria said that she had to help her mother dress, bathe, and go to the bathroom. AR 52. Maria testified that there were days when Plaintiff's pain medicine "leaves her, almost like she's senseless, like she's just a vegetable." AR 53. She said that her mother had difficulty lifting and dropped cups all the time. Id. Maria testified that Plaintiff could not walk or sit for long periods of time, and she had seen Plaintiff fall down. AR 52-53. Maria further testified that Plaintiff could barely walk and needed the help of her walker. AR 54. Maria said that Plaintiff lost sensation in her feet and her leg gave out. Id.

Here, Maria's observations of Plaintiff's symptoms and daily activities essentially mirrored Plaintiff's testimony, which the ALJ properly rejected as not being fully credible, as discussed above. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina

---

[8] To distinguish her from her mother, Maria Ornelas will be referred to by her first name.

v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine v. Comm., 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

      Plaintiff does not dispute that Maria's testimony largely duplicated her own testimony. Rather, she argues that Molina and Valentine are inapplicable because in those cases, "the ALJ recognized the lay witness testimony, and the issue was whether the ALJ sufficiently articulated or justified the rejection of the lay testimony." JS at 26. Nevertheless, the failure to address cumulative lay testimony that does not introduce new evidence is harmless error. See Zerba v. Comm'r of Soc. Sec. Admin., 279 F. App'x 438, 440 (9th Cir. 2008) (rejecting claimant's contention that ALJ's failure to address her husband's lay testimony was reversible error where husband's testimony was substantially similar to claimant's properly discredited testimony); Thomas v. Astrue, No. 12-762, 2013 WL 1294520, at *3 (C.D. Cal. Mar. 27, 2013) (finding any error in failing to address testimony from claimant's daughter harmless when her testimony offered no new evidence and was merely duplicative of claimant's); Heskett v. Astrue, No. 11-03377, 2012 WL 1997166, at *11 (N.D. Cal. June 4, 2012) (holding that "if the third party testimony does not introduce new evidence and is merely duplicative, the ALJ does not err by failing to evaluate the testimony"). Because the ALJ appropriately rejected Plaintiff's statements, the ALJ could have also rejected Maria's statements as not fully credible because they were substantially similar to those of Plaintiff. Therefore, the ALJ's failure to address Maria's lay testimony was harmless error. See Zerba, 279 F. App'x at 440.

///

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: October 27, 2015

**DOUGLAS F. McCORMICK**

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge